UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

THERESA J. MILLER,

        Plaintiff,

v.                                                                  Case No. 1:15-cv-534
                                                            Hon. Ray Kent

COMMISSIONER OF SOCIAL
SECURITY,

        Defendant.

                                            /

**OPINION**

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of the Social Security Administration (Commissioner) denying her claim for Supplemental Security Income (SSI).

Plaintiff alleged a disability onset date of June 25, 2010. PageID.269. Her education included one year of college, and she had previous employment as a bartender, cashier, member of a kitchen staff, food and beverage supervisor at a casino, and waitress. PageID.274. Plaintiff identified her disabling conditions as chronic fibromyalgia, depression, arthritis, limited use of her right arm, asthma, chronic obstructive pulmonary disease (COPD), diabetes, and hepatitis C. PageID.273. An ALJ reviewed plaintiff's claim *de novo* and entered a written decision denying benefits on December 20, 2013. PageID.37-51. This decision, which was later approved by the Appeals Council, has become the final decision of the Commissioner and is now before the Court for review.

### I. LEGAL STANDARD

This Court's review of the Commissioner's decision is typically focused on determining whether the Commissioner's findings are supported by substantial evidence. 42 U.S.C. §405(g); *McKnight v. Sullivan*, 927 F.2d 241 (6th Cir. 1990). "Substantial evidence is more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Secretary of Health & Human Services*, 25 F.3d 284, 286 (6th Cir. 1994). A determination of substantiality of the evidence must be based upon the record taken as a whole. *Young v. Secretary of Health & Human Services*, 925 F.2d 146 (6th Cir. 1990).

The scope of this review is limited to an examination of the record only. This Court does not review the evidence *de novo*, make credibility determinations or weigh the evidence. *Brainard v. Secretary of Health & Human Services*, 889 F.2d 679, 681 (6th Cir. 1989). The fact that the record also contains evidence which would have supported a different conclusion does not undermine the Commissioner's decision so long as there is substantial support for that decision in the record. *Willbanks v. Secretary of Health & Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). Even if the reviewing court would resolve the dispute differently, the Commissioner's decision must stand if it is supported by substantial evidence. *Young*, 925 F.2d at 147.

A claimant must prove that he suffers from a disability in order to be entitled to benefits. A disability is established by showing that the claimant cannot engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period

of not less than twelve months. *See* 20 C.F.R. §416.905; *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990). In applying the above standard, the Commissioner has developed a five-step analysis:

> The Social Security Act requires the Secretary to follow a "five-step sequential process" for claims of disability. First, plaintiff must demonstrate that she is not currently engaged in "substantial gainful activity" at the time she seeks disability benefits. Second, plaintiff must show that she suffers from a "severe impairment" in order to warrant a finding of disability. A "severe impairment" is one which "significantly limits . . . physical or mental ability to do basic work activities." Third, if plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment meets a listed impairment, plaintiff is presumed to be disabled regardless of age, education or work experience. Fourth, if the plaintiff's impairment does not prevent her from doing her past relevant work, plaintiff is not disabled. For the fifth and final step, even if the plaintiff's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that plaintiff can perform, plaintiff is not disabled.

*Heston v. Commissioner of Social Security*, 245 F.3d 528, 534 (6th Cir. 2001) (citations omitted).

The claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work through step four. *Jones v. Commissioner of Social Security*, 336 F.3d 469, 474 (6th Cir. 2003). However, at step five of the inquiry, "the burden shifts to the Commissioner to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile." *Id.* If it is determined that a claimant is or is not disabled at any point in the evaluation process, further review is not necessary. *Mullis v. Bowen*, 861 F.2d 991, 993 (6th Cir. 1988).

"The federal court's standard of review for SSI cases mirrors the standard applied in social security disability cases." *D'Angelo v. Commissioner of Social Security*, 475 F. Supp. 2d 716, 719 (W.D. Mich. 2007). "The proper inquiry in an application for SSI benefits is whether the

plaintiff was disabled on or after her application date." *Casey v. Secretary of Health and Human Services*, 987 F.2d 1230, 1233 (6th Cir. 1993).

## II. ALJ'S DECISION

Plaintiff's claim failed at the fifth step of the evaluation. At the first step, the ALJ found that plaintiff has not engaged in substantial gainful activity since her SSI application date of September 13, 2011. PageID.39. At the second step, the ALJ found that plaintiff had severe impairments of COPD/asthma, degenerative disc disease, fibromyalgia, status/post broken right arm resulting in compartmental syndrome, depression, anxiety disorder, polysubstance abuse, and hepatitis C. *Id.* At the third step, the ALJ found that plaintiff did not have an impairment or combination of impairments that met or equaled the requirements of the Listing of Impairments in 20 C.F.R. Pt. 404, Subpt. P, App. 1. PageID.40.

The ALJ decided at the fourth step that:

> [T]he claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 416.967(a) with the following: She is limited to simple, routine and repetitive tasks in a work environment free of fast paced production requirements involving only simple work related decisions and routine work place changes. She can occasionally stoop, kneel, crouch or crawl; never climb ladders, ropes or scaffolds; and occasionally climb ramps and stairs. She should avoid concentrated exposure to dust, fumes, gases, odors or poorly ventilated areas; and avoid exposure to hazards such as heights or machinery with moving parts. She can never reach above shoulder level with her right upper extremity; can occasionally handle and finger with her right upper extremity. She can have occasional contact with coworkers, supervisors and the general public. She can occasionally rotate, flex, or extend the neck. She would likely be absent from work one day per month.

PageID.42. The ALJ also found that plaintiff is unable to perform any past relevant work. PageID.49.

At the fifth step, the ALJ determined that plaintiff could perform a significant number of unskilled, sedentary exertional jobs in the national economy. PageID.50-51. Specifically, the ALJ found that plaintiff could perform the following unskilled, sedentary work in Michigan: inspector (2,500 jobs); sorter (2,000 jobs); and machine tender (2,000 jobs). PageID.50-51. Accordingly, the ALJ determined that plaintiff has not been under a disability, as defined in the Social Security Act, since September 13, 2011, the date the application for SSI was filed. PageID.51.

### III.  ANALYSIS

Plaintiff raised two issues on appeal.

### A.  The substantial evidence demonstrates the plaintiff's treating physician's opinion was improperly rejected and the ALJ failed to properly evaluate listing 1.04.

The gist of plaintiff's claim is that the ALJ failed to properly address Listing 1.04. A claimant bears the burden of demonstrating that he meets or equals a listed impairment at the third step of the sequential evaluation. *Evans v. Secretary of Health & Human Services*, 820 F.2d 161, 164 (6th Cir.1987). In order to be considered disabled under the Listing of Impairments, "a claimant must establish that his condition either is permanent, is expected to result in death, or is expected to last at least 12 months, as well as show that his condition meets or equals one of the listed impairments." *Id.* An impairment satisfies the listing only when it manifests the specific findings described in the medical criteria for that particular impairment. 20 C.F.R. § 416.925(d). A claimant does not satisfy a particular listing unless all of the requirements of the listing are present. *See Hale v. Secretary of Health & Human Services*, 816 F.2d 1078, 1083 (6th Cir.1987). *See, e.g., Thacker v. Social Security Administration*, 93 Fed.Appx. 725, 728 (6th Cir 2004) ("[w]hen a claimant alleges

5

that he meets or equals a listed impairment, he must present specific medical findings that satisfy the various tests listed in the description of the applicable impairment or present medical evidence which describes how the impairment has such equivalency"). If a claimant successfully carries this burden, the Commissioner will find the claimant disabled without considering the claimant's age, education and work experience. 20 C.F.R. § 416.920(d).

Listing 1.04 provides as follows:

> 1.04 Disorders of the spine (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equina) or the spinal cord. With:
>
> > A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine); or
> >
> > B. Spinal arachnoiditis, confirmed by an operative note or pathology report of tissue biopsy, or by appropriate medically acceptable imaging, manifested by severe burning or painful dysesthesia, resulting in the need for changes in position or posture more than once every 2 hours; or
> >
> > C. Lumbar spinal stenosis resulting in pseudoclaudication, established by findings on appropriate medically acceptable imaging, manifested by chronic nonradicular pain and weakness, and resulting in inability to ambulate effectively, as defined in 1.00B2b.

20 C.F.R. Pt. 404, Subpt. P, App. 1, Listing 1.04.

In evaluating this listing, the ALJ found that:

> There is also no evidence of compromise of a nerve root or the spinal cord as described in Listing 1.04. In addition there is no, (A) Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, or motor loss (atrophy with associated muscle weakness or

muscle weakness) accompanied by sensory or reflex loss and positive straight-leg raising. Furthermore, there is no (B) Spinal arachnoiditis or; (C) Lumbar spinal stenosis resulting in pseudoclaudication.

PageID.40.

Plaintiff bears the burden of demonstrating that she meets a listed impairment. *Kirby v. Commissioner of Social Security Administration*, 37 Fed. Appx. 182, 183 (6th Cir. 2002). Here, plaintiff has failed to meet her burden. In support of her claim, plaintiff referred to radiology reports from July 22, 2012, which she contends demonstrate nerve root compression, i.e., "The cervical MRI demonstrates at C4-5 the herniation 'nearly indents upon the cord,' and at C6-7 the disc protrusion "nearly indenting upon the anterior division of the forming root." Plaintiff's Brief (docket no. 12, PageID.922); MRIs (PageID.547, 549). Plaintiff's lay interpretation of this medical evidence, i.e., that the MRI studies demonstrated nerve root compression as required under Listing 1.04, is not sufficient to establish the requirements of the listing. *See, e.g., Garcia v. Colvin*, No. 14 C 4865, 2015 WL 4658283 at *6 (N.D. Ill. Aug. 5, 2015) (claimant's lay interpretation of a diagnostic image, coupled with her own testimony, was insufficient to establish the existence of a cardiovascular impairment under Listing 4.00).

Here, the ALJ noted in a later portion of the decision that in September 2012, plaintiff's neurosurgeon, R. Blaine Rawson, M.D:

> . . . reviewed imaging studies of the cervical spine and assessed the claimant with cervical spondylosis with disk osteophytes at C4-5, C5-6, and C6-7. An initial treatment with pain management, possible C4-5 epidural steroid injection was recommended (Ex. Bl5F/ 10-12).

7

PageID.44. Dr. Rawson's records make no reference to nerve root compression. PageID.586-588. The ALJ's determination with respect to Listing 1.04 is supported by substantial evidence. Accordingly, plaintiff's claim of error is denied.[1]

### B. The ALJ's Residual Functional Capacity (RFC) and credibility determination does not comply with Social Security rules and regulations.

Plaintiff contests the ALJ's RFC determination. RFC is a medical assessment of what an individual can do in a work setting in spite of functional limitations and environmental restrictions imposed by all of his medically determinable impairments. 20 C.F.R. § 404.1545. It is defined as "the maximum degree to which the individual retains the capacity for sustained performance of the physical-mental requirements of jobs." 20 C.F.R. Part 404, Subpt. P, App. 2, § 200.00(c). In determining plaintiff's RFC, the ALJ's decision included a lengthy review of plaintiff's medical history. PageID.42-49. Here, the ALJ found that plaintiff suffered from many limitations which restricted her to RFC to a limited range of sedentary work. PageID.42.

The essence of plaintiff's argument is that there is "not rationale whatsoever" in the ALJ's RFC determination and that "[t]he ALJ seemed more interested in playing doctor and trying to diagnose the Plaintiff than attempting to determine the Plaintiff's residual functional capacity evaluation." Plaintiff's Brief (docket no. 12, PageID.924). While plaintiff refers to the ALJ's "biased" questioning and "badgering" of the plaintiff in the courtroom, she provides no substantive argument on any particular issue. In the same vein, plaintiff recites a portion of SSR 96-8p followed by the sentence, "Curiously, the ALJ never complied or even attempted to reconcile Social Security

---

[1] While plaintiff's brief includes a cursory reference to "Dr. Beck's medical opinion," she does not develop this argument or explain how it relates to the ALJ's determination that she did not meet the requirements of Listing 1.04.

8

Ruling 96-8p with his decision." PageID.925. Such cursory statements and musings do not form the basis of a reasoned appellate argument. "It is not sufficient for a party to mention a possible argument in a most skeletal way, leaving the court to . . . put flesh on its bones." *McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997).

Finally, to the extent plaintiff contends that the ALJ erred by failing to address some of her alleged symptoms (e.g., "chronic pain, anxiety/panic attacks, need to elevate her legs, and severe fatigue," PageID.924), she cites no records to guide the Court on appeal nor address the legal standard for contesting an ALJ's credibility determination. In this regard, the ALJ found that plaintiff was not credible on many of her claims. An ALJ may discount a claimant's credibility where the ALJ "finds contradictions among the medical records, claimant's testimony, and other evidence." *Walters v. Commissioner of Social Security*, 127 F.3d 525, 531 (6th Cir. 1997). "It [i]s for the [Commissioner] and his examiner, as the fact-finders, to pass upon the credibility of the witnesses and weigh and evaluate their testimony." *Heston*, 245 F.3d at 536, *quoting Myers v. Richardson*, 471 F.2d 1265, 1267 (6th Cir. 1972). The court "may not disturb" an ALJ's credibility determination "absent [a] compelling reason." *Smith v. Halter*, 307 F.3d 377, 379 (6th Cir. 2001). The threshold for overturning an ALJ's credibility determination on appeal is so high that the Sixth Circuit has expressed the opinion that "[t]he ALJ's credibility findings are unchallengeable," *Payne v. Commissioner of Social Security*, 402 Fed. Appx. 109, 113 (6th Cir. 2010), and that "[o]n appeal, we will not disturb a credibility determination made by the ALJ, the finder of fact . . . [w]e will not try the case anew, resolve conflicts in the evidence, or decide questions of credibility." *Sullenger v. Commissioner of Social Security*, 255 Fed. Appx. 988, 995 (6th Cir. 2007). Nevertheless, an ALJ's credibility determinations regarding subjective complaints must be

9

reasonable and supported by substantial evidence. *Rogers v. Commissioner of Social Security*, 486 F.3d 234, 249 (6th Cir. 2007).

Here, the ALJ found that plaintiff's allegation of disabling impairments was not entirely credible for the following reasons:

> In assessing the claimant's credibility, the undersigned first reiterates that the objective medical evidence and clinical examination findings do not corroborate the claimant's alleged symptoms and limitations. Furthermore, the record establishes that the claimant consistently failed to follow recommendations made by her treating medical providers. The record also reveals that the claimant cancelled or failed to show up for medical appointments on a number of occasions, including consultative examinations that were arranged by the Social Security Administration to develop more evidence regarding the claimant's alleged impairments (Ex. Bl6F, B3A/8). Indeed, one consultative examiner refused to see the claimant as she had a history of 3 broken appointments with him (Ex. B3A/8). Notably, the medical evidence also contains statements by the claimant's treating providers that she has made inconsistent statements and misrepresented her condition in possible attempts to obtain narcotic medications. One medical provider noted that the claimant was "quite unhappy with anything other than narcotics and this was her primary if not only reason for visit". This provider further stated that she was "very doubtful" the claimant "will pursue any avenue other than someone to Rx her narcotics" (Ex. B27F/15). Another medical provider indicated that he believed the claimant was *exaggerating* her straight leg raise. He also noted that the claimant's claim of NSAID allergy was a red flag for narc seeking behavior (Ex. Bl4F/5). The claimant's failure to follow medical advice and attend scheduled appointments suggests that her symptoms may not be as serious as she has generally alleged.
>
> While the claimant testified to a limited lifestyle, the record indicates that she performs a variety of activities. She prepares simple meals and performs household chores such as sweeping, dusting, and laundry. She also shops, reads and watches television. Finally, although she reported needing help washing her hair, she has little trouble managing her personal care (Ex. B6E, B7E).
>
> A review of the claimant's work history shows that the claimant worked only sporadically prior to the alleged disability onset date, which raises a question as to whether the claimant's continuing unemployment is actually due to medical impairments. In particular, I note the claimant's earnings queries demonstrated she has not earned any wages since 2004, which is approximately six years prior to when she filed her supplemental security income application (B5D).

PageID.46-47.  The ALJ's credibility determination is supported by substantial evidence.  There is no compelling reason to disturb the ALJ's findings.  *See Smith*, 307 F.3d at 379.  For these reasons, plaintiff's claims of error will be denied.

### IV.  CONCLUSION

The ALJ's determination is supported by substantial evidence.  The Commissioner's decision will be **AFFIRMED** pursuant to 42 U.S.C. § 405(g).  A judgment consistent with this opinion will be issued forthwith.


Dated:  September 27, 2016            /s/ Ray Kent
                                                  RAY KENT
                                                  United States Magistrate Judge